## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ALEX HELD,

        *Plaintiff*,

vs.                                Case No. 10-2393-EFM

FERRELLGAS, INC.,

        *Defendant.*

## MEMORANDUM AND ORDER

This case involves a retaliation claim in which Plaintiff Alex Held asserts that he was terminated after he complained to his supervisor that a female co-worker mistreated him. Before the Court is Defendant's Motion for Summary Judgment (Doc. 50). Plaintiff also filed a Motion for Leave to File a Surreply (Doc. 78). The motions have been fully briefed. For the following reasons, the Court grants Doc. 50 and denies Doc. 78.[1]

### I. Factual and Procedural Background[2]

Plaintiff Alex Held began working for Defendant Ferrellgas, Inc. on February 13, 2008. Ferrellgas sells propane to residential, commercial, and agricultural customers nationwide. Held

---

[1] In Plaintiff's Motion for Leave to File a Surreply, he generally asserts that Defendant makes inappropriate arguments in responding to facts and mischaracterizes evidence in its reply. The Court is cognizant of summary judgment standards and the appropriate method to controvert factual statements. As such, the Court denies Plaintiff's motion.

[2] For purposes of this summary judgment order, the uncontroverted facts are set forth in the light most favorable to the plaintiff.

worked in Overland Park, Kansas as a National Accounts Coordinator in Ferrellgas' National Sales Department. A National Accounts Coordinator acts as a liaison between national account customers and Ferrellgas locations that serve them. Held was one of five National Account Coordinators, and he was the only male at the time of his termination.[3]

In Ferrellgas' handbook, there is a section entitled "Resolving Concerns and Differences." It provides that "Ferrellgas encourages Employees to openly discuss problems, concerns, and questions related to work with their immediate Managers." In addition, Ferrellgas' handbook provides under the "Equal Employment Opportunity" section that an employee who believes he is experiencing job-related discrimination or harassment based on sex should report the incident to his manager.

At the start of his employment, Held reported to Shannon Brown, National Accounts Manager. Brown reported to Troy Coats, National Sales Vice President.

On August 28, 2008, Brown gave Held a Performance Plan & Review and noted that Held's performance "meets expectations." The Review noted some highlights of 2008, such as successfully managing the Legget and Platt award. It also noted things to work on, including making sure that Held's emails to internal customers were helpful, courteous, and timely.

In November 2008, shortly after Held took time off for his wedding, Held told Brown that he was suffering from back pain and that his doctor advised him that he needed to stay off his feet for a week. Held testified that Brown was "very accommodating" and allowed Held to work from home. During this time, Held was supposed to be working and performing his regular duties from home. Brown did not have a problem with Held working from home until it became excessive, and

---

[3]When Held began his employment, there was one other male National Account Coordinator. That individual was promoted on August 1, 2008.

Brown believed it became excessive in November after Held was gone for four days.  Brown questioned the severity and the truth that Held was truly gone as a result of his back problems. Around November 24, 2008, Brown counseled Held regarding his attendance and told Held that he would no longer allow Held to work from home.

Amber Potts, a co-worker of Held's, had problems with Held's use of sick leave and believed that  balls got dropped while he was gone.[4]  The other national account coordinators, Julie Forck, Megan Foresee, and Vicki Garcia, also complained to Potts that they were doing Held's work and that he seemed to be asking a lot of questions.  Potts recalled speaking with Brown once about Held not doing his work.

Beginning on January 16, 2009, Brown took a different position within Ferrellgas.  Potts became National Accounts Manager and Held's immediate supervisor.  Coats remained Held's second-level supervisor.

On April 14 or 15, 2009, Held complained to Potts about his co-worker, Megan Foresee. Foresee held the same position as Held and started her employment with Ferrellgas approximately three months after Held on April 16, 2008. Held had not previously raised any concerns about Foresee.

Held told Potts that he believed Foresee treated him a hostile and threatening manner and that she treated him differently from the way she treated the other account coordinators, all of whom were female. Held thought that Foresee was treating him rudely because he was man, and he told Potts that he thought he was being discriminated against because of his gender.  In describing how Foresee treated him, Held told Potts that Foresee would curtly respond to him in a very rude, sharp

---

[4]Potts did not have a problem with Held's use of sick leave after she became his manager.

-3-

tone.  In addition, Held informed Potts that when Held would ask Foresee questions, he would get a lot of sighs and off-putting looks.  Held's other female co-workers responded politely to him.  Held also stated that Foresee would take it upon herself to handle issues with Held's accounts without consulting him which resulted in mistakes.  When speaking with Potts, Held used the term sexual harassment or gender discrimination.  Held told Potts that he did not know whether he should call the work's harassment hotline, and Potts told him that he could call the hotline at any time.

Held testified that he believed Foresee's conduct began a "couple months" before he spoke with Potts.  Foresee never touched Held in an inappropriate manner, never made sexual comments, and never did anything that came across as a sexual advance, flirting, or anything along those lines.  Held estimated that Foresee gave him a curt response a couple of times a week and sighs or off-putting looks a couple times a week.

According to Held, after Held's statements to Potts about Foresee's behavior, Potts told Held "that she was aware of Megan's inappropriate behavior."  Held understood Potts to be referring to the conduct that he had raised at the meeting.

After Held's and Potts' meeting, Held returned to his desk.  Potts testified that she thought it would be best to get everyone in the same room to talk it out, and she told Foresee that she had a complaint from Held about the tone of Foresee's voice.  Potts asked Held to talk in a nearby office, and Foresee was already in the office.  Potts told Held that she had been talking with Foresee and decided that she wanted to mediate a conversation between the two of them.  Both Held and Foresee agreed to the meeting.

Held told Foresee the same things about her conduct that he had told Potts. Foresee responded by telling Held that she had held a grudge against him because when Foresee was new, Held declined to help her train somebody because he was busy in another project.[5] Foresee also told Held that she did not believe that he was carrying his weight on the team. According to Held, Foresee stated that she had a strong personality and sometimes people took things the wrong way, and she would work on phrasing her responses more appropriately. Held testified that before this meeting with Foresee, he did not have an understanding about why Foresee was treating him differently. After the meeting concluded, Held felt like he had resolved the issue.

Potts called her manager, Coats, regarding Held's complaint about Foresee. Coats testified that Potts told him, "Alex represented that he had been mistreated by Megan Foresee and that she was disrespectful, I believe is the term Amber used." Potts did not suggest to Coats that Held felt that Foresee was treating him differently than the other account coordinators because of his gender.[6]

Coats did not speak with Held regarding Held's complaint about Foresee. Coats testified that he knew that in general Held's supervisors were unhappy with Held's level of performance and that is was an ongoing issue early on. In addition, Coats testified that he did not think Held took his job seriously, and he thought he was lazy.[7]

---

[5]Held testified that he was in the middle of a task that he needed to complete and was not able to help train the employee at the time Foresee requested.

[6]Plaintiff's attempt to controvert this fact fails as Defendant appropriately cited to both the deposition testimony of both Coats and Potts for this fact.

[7]Plaintiff attempts to controvert this fact by asserting that he did take his job seriously and he worked hard. Held testified that he recalled having one conversation with Coats in his office sometime during his employment in which Coats told him that he was doing very well.

Coats made the decision to terminate Held on either Thursday, April 16 or Friday, April 17. Coats had the final say in deciding to terminate Held, but Potts and Mary Lentz, Ferrellgas' Human Resources Director, were also involved in the decision.  On the morning of April 17, Coats called Held at his desk and told him to meet him in Coats' office.  When Held entered the office, Coats and Potts were present, and Coats informed Held that "we're terminating your employment immediately."

In this meeting, Coats told Held that he was terminating his employment because he did not like the way Held had handled the situation with Foresee and that Held should have gone to Foresee first to resolve the issue, rather than involving Potts.  Held informed Coats that the reason he handled the Foresee situation that way was because he believed he was following Ferrellgas's handbook and with his previous company, "issues with male and female employees can, you know, create an open door for other issues."  Coats cut Held off and told him that the man and woman thing was irrelevant. Coats also told Held that his performance was ok but he did not see Held "busting his ass" on his accounts.  Held was then escorted to the door.

On July 15, 2010, Plaintiff filed this lawsuit asserting that he was retaliated against for complaining about gender discrimination.  Defendant now seeks summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[8]  "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[9]  A fact

---

[8]Fed. R. Civ. P. 56(a).

[9]*Haynes v. Level 3 Commc'ns*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

is "material" when "it is essential to the proper disposition of the claim."[10]  The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[11]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[12]  In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[13]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[14]  The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[15]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[16] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[17]  The nonmovant's "evidence, including testimony, must be based on more

---

[10]*Id.*

[11]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[12]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[13]*Id.* (citing *Celotex*, 477 U.S. at 325).

[14]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[15]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[16]*Adler*, 144 F.3d at 671.

[17]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

than mere speculation, conjecture, or surmise."[18]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[19]

### III. Discussion

Title VII makes it unlawful to retaliate against an employee because "he has opposed any practice made an unlawful employment practice" by Title VII or because "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" pursuant to Title VII.[20]  As to the opposition clause, protected opposition may range from voicing informal complaints to supervisors to filing a formal complaint.[21]  A plaintiff's complaint about "plain vanilla rude and unfair conduct" is insufficient; the complaint must be about a prohibited unlawful practice under Title VII.[22]

Without direct evidence of retaliation, a retaliation claim is subject to the *McDonnell Douglas* burden-shifting framework.[23]  Plaintiff bears the burden of establishing a prima facie case.[24] Once a plaintiff does so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[25]  The burden then shifts back to the

---

[18]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[19]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[20]42 U.S.C. § 2000e-3(a).

[21]*Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004).

[22]*See Peterson v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002).

[23]*EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011); *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004).

[24]*Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009).

[25]*Id.*

plaintiff to demonstrate that the reason is pretextual.[26]

Defendant argues that Plaintiff cannot establish a prima facie case of retaliation because he cannot demonstrate the first and third elements. "To establish a prima facie claim for retaliation, a plaintiff must establish (1) he or she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action."[27]

As to the first element, to engage in protected opposition, a plaintiff must have a reasonable good faith belief that he was opposing discrimination.[28]  An actual violation of Title VII is not required to maintain a Title VII retaliation claim but rather a reasonable good faith belief that the underlying conduct violated Title VII.[29]  As such, a plaintiff's opposition could be protected even if he is mistaken about whether the alleged conduct in fact violated Title VII.[30] When considering whether a plaintiff's belief was reasonable, there are both subjective and objective elements.[31]  To determine whether an employee's belief is objectively reasonable that the conduct violated Title VII, and thus meeting element one of a prima facie case of retaliation of engaging in protected

---

[26]*Id.*

[27]*Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007).

[28]*Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1171 (10th Cir. 2003); *Love v. Remax of Am., Inc.*, 738 F.3d 383, 385 (10th Cir. 1984).

[29]*Love,* 738 F.3d at 385; *see also Dockery v. Unified Sch. Dist. No. 231*, 382 F. Supp. 2d 1234, 1242 (D. Kan. 2005).

[30]*Dockery*, 382 F. Supp. 2d at 1242 (citing *Love*, 738 F.2d at 385).

[31]*See Crumpacker,* 338 F.3d at 1171; *Zinn v. McKune*, 143 F.3d 1353, 1362 (10th Cir. 1998); *Dockery*, 382 F. Supp. 2d at 1242 (citing *Zinn*, 143 F.3d at 1362).

opposition, a court may consider the underlying substantive law.[32]

A typical gender discrimination claim has three essential elements: "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination."[33] With respect to a reverse gender discrimination claim, a plaintiff must make a stronger prima facie case because a plaintiff "in lieu of showing that he belongs to a protected group, [must] establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority."[34]

As to a hostile work environment claim, this requires a showing "that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[35]   In considering whether a reasonable person in the plaintiff's position would

---

[32]*See, e.g, Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271-72 (2001) (per curiam) (considering the elements of a sexual harassment claim when evaluating whether plaintiff held a reasonable belief when she complained to her employer that she had been sexually harassed and then brought a retaliation claim). *See also Zimpfer v. Aramark Mgmt. Servs., LP*, --- F. Supp. 2d ---, 2011 WL 2533021, at *3 (D. Utah June 24, 2011) (determining that the plaintiff did not possess an objectively reasonable belief that he was sexually harassed by considering Title VII sexual harassment substantive law); *Weil v. Carecore Nat'l, LLC*, 2011 WL 2415791, at *5-6 (D. Colo June 14, 2011) (concluding that plaintiff did not possess a reasonable belief that she was disabled under the ADA and therefore failed to meet the first element of a retaliation claim of engaging in protected opposition to discrimination); *Dockery*, 382 F. Supp. 2d at 1243 (finding that the plaintiff could not establish a prima facie case of retaliation because he did not have a reasonable good faith belief that he was the victim of sexual harassment).

[33]*EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007).

[34]*Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992).

[35]*Sandoval v. City of Boulder, Colo*, 388 F.3d 1312, 1327 (10th Cir. 2004) (citation omitted). To establish a sexually hostile work environment claim, a plaintiff must demonstrate that "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) (quotation and citations omitted). Of course, in this case, it would have to be a reverse sexually hostile environment claim as Plaintiff is male.

consider the harassment severe, some factors to consider are the frequency; whether it is physically threatening or humiliating or mere offensive utterances; and whether it unreasonably interfered with work performance.[36]  Furthermore, there must be evidence that the plaintiff was targeted because of his gender.[37]

In this case, Plaintiff does not bring a reverse gender discrimination or a hostile environment claim; instead, he brings a retaliation claim.  As such, the inquiry is not whether he could establish those claims.  Rather, the inquiry is  whether Plaintiff held a reasonable, good faith belief that he experienced reverse gender discrimination or a hostile work environment in violation of Title VII and thus engaged in protected opposition when he complained about the alleged discrimination. Although it is unnecessary for an employee to know the specifics of Title VII law, and a mistaken belief regarding whether a Title VII violation occurred may be sufficient to qualify as protected activity, an employee's belief must be reasonable.

The Court finds Plaintiff's belief that he experienced gender discrimination objectively unreasonable. "Title VII forbids actions taken on the basis of sex that 'discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment.'"[38]  In this case, there was no change in the conditions of his employment due to Plaintiff's co-worker's rude behavior.  Plaintiff testified that he believed that even with his issues with Foresee, he was still able to do a good job.  Although Plaintiff testified that he felt uncomfortable, there are no terms, conditions, or privileges of his employment that he could reasonably believe were altered on the

---

[36]*Harsco*, 475 F.3d at 1187 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

[37]*Sandoval,* 388 F.3d at 1327.

[38]*Breeden*, 532 U.S. at 270 (citing 42 U.S.C. § 2000e-2(a)(1)).

basis of his gender.  The Court simply cannot find that Plaintiff's belief that his co-worker discriminated against him on the basis of his gender objectively reasonable.

Furthermore, Plaintiff's belief that he experienced a hostile work environment is objectively unreasonable.   As noted above, a hostile work environment involves behavior that is severe and pervasive resulting in an abusive working relationship on the basis of gender. Plaintiff experienced rude behavior, sighs, and off-putting looks several times a week for a couple of months. There is no evidence of crude or bigoted behavior.  There is no evidence that Plaintiff's co-worker ever made any gender related comments to Plaintiff.  Nor is there any evidence that Plaintiff believed that his co-worker's behavior was physically threatening or humiliating. Instead, Plaintiff asserts that his female co-worker was rude to him, and because he was the only male in the five person group, it must have been because of his gender.  Plaintiff cannot direct the Court to any specific comments his co-worker made; but rather, he merely states that his co-worker was rude to him for several months several times a week.  There simply is no evidence to indicate an objectively reasonable belief that Plaintiff experienced a hostile work environment on the basis of his gender.

Title VII was enacted to protect employees from workplace discrimination and retaliation. It is not a general civility code.[39]  At most, one of Plaintiff's female co-workers was rude to him. The Court concludes that no objectively reasonable employee would conclude that Plaintiff's co-worker's behavior was discrimination on the basis of Plaintiff's gender.  As such, Plaintiff's complaint to his supervisor is not protected opposition to discrimination, and Plaintiff cannot establish the first element of a prima facie case of retaliation.   Accordingly, the Court grants Defendant summary judgment.

---

[39]*See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998); *see also Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1220-21 (10th Cir. 2007).

**IT IS ACCORDINGLY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 50) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Surreply (Doc. 78) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 19th day of October, 2011.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE